

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02 C 8678 |
| | ) | |
| v. | ) | |
| | ) | |
| PACIFIC FIRST BENEFIT, LLC | ) | Honorable Charles R. Norgle |
| KEY NATION BENEFIT, LLC | ) | |
| FIRST FEDERAL BENEFIT, LLC, | ) | |
| FEDERAL CREDIT SERVICES, LIMITED, and | ) | |
| ALEX ORPHANOU, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court are Plaintiff's Motion for Summary Judgment against Defendant Alex Orphanou and Plaintiff's Motion for Entry of Monetary Judgment against the Corporate Defendants. For the following reasons, the Motions are granted.

**I. BACKGROUND[1]**

**A. Facts**

Plaintiff Federal Trade Commission ("FTC" or "the Commission") brings this action against Defendants Pacific First Benefit, LLC, Key Nation Benefit, LLC, First Federal Benefit, LLC, Federal Credit Services, Limited, ("the Companies"), and Alex Orphanou ("Orphanou"). Plaintiff FTC is an independent agency of the United States Government, created by federal statute. The FTC, *inter alia*, enforces Section 5(a) of the FTC Act, which provides in part that

---

[1] The court takes the undisputed facts from Plaintiff's Local Rule 56.1 Statement. Defendants did not submit a Local Rule 56.1 Statement, nor have they filed any substantive response to Plaintiff's Motion for Summary Judgment.

1

"[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1). The FTC also enforces the Telemarketing Sales Rule ("TSR"), which prohibits deceptive or abusive telemarketing practices. 16 C.F.R. §§ 310.3-4. The Commission is authorized by statute to bring actions in the federal district court which seek to enjoin violations of the FTC Act and the TSR, and to obtain restitution or other relief for injured consumers. 15 U.S.C. §§ 53(b), 57b, 6102(c), and 6105(b). Defendant Companies are all owned and controlled by individual Defendant Orphanou, and are all corporations registered in the state of Delaware, with their offices located at 164 Eglinton Avenue East, Suite 200, Toronto, Canada.

In support of its Motion for Summary Judgment, the FTC has submitted uncontroverted deposition testimony, uncontroverted declarations, answers to various interrogatories, documentation in the form of, *inter alia*, letters from consumers to the Companies complaining of Defendants' actions, consumer complaints directed to the Better Business Bureau complaining of Defendants' actions, correspondence from various state Attorneys General Offices and Consumer Affairs Departments directed to Defendants, scripts used by Defendants' telemarketers, and sample pages from the "benefits package" sent to consumers. This uncontroverted evidence establishes the following. Since at least February 1999, and continuing until sometime in 2002, employees of the Companies made unsolicited telephone calls to American consumers (no Canadian consumers were targeted), including consumers in the Northern District of Illinois. These consumers were targeted by the Defendants because of their low or bad credit ratings. During the telephone calls, Defendants' employees would offer to provide consumers with pre-approved, low interest Mastercard or Visa credit cards, with guaranteed credit lines of up to $5,000, if the consumer would agree to permit Defendants to

2

debit their bank accounts for a fee ranging from $175 to $199. Defendants' employees would ask the consumers for bank account numbers and routing information, then debit the accounts later. However, no consumer ever received a pre-approved credit card from Defendants. In fact, Defendants were not even authorized by Mastercard or Visa to issue credit cards.

Instead, the consumers who fell victim to this scam received an essentially worthless packet of materials (the "benefits package") which included information about credit and finances and how to obtain credit and repair bad credit, various offers of discount shopping and vacations, and advice concerning how to avoid financial and credit card fraud (Defendants' maleficent sense of irony is not lost on the court). These packets also included forms that appeared to be credit card applications. These "applications" asked consumers to provide personal information such as social security numbers and employment history. Consumers were to return these "applications" to Defendants, who promised to forward these "applications" to financial institutions that would issue credit cards to the consumers. Consumers who returned these "applications" never received credit cards. The FTC estimates that over 40,000 United States consumers, including some in the Northern District of Illinois, were defrauded of $8,463,728.00. The Commission brings this action to, *inter alia*, obtain an injunction permanently halting Defendants from continuing this scam, and to obtain restitution for consumers defrauded by the Defendants.

This civil action, however, is far from the worst of Orphanou's problems. In December 2001, the United States Attorney for the Middle District of Pennsylvania and the Royal Canadian Mounted Police, along with the United States Postal Service and the FTC, began an investigation into whether the Defendants' actions had violated criminal laws. Since then, Orphanou has been the subject of an ongoing criminal investigation into whether he has violated the criminal laws of

the United States, specifically 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), and § 371 (conspiracy to commit fraud).

**B. Procedural History**

The FTC filed its Complaint against the Defendants on December 2, 2002, alleging violations of the FTC Act and the TSR. On December 16, 2002, the court entered a Stipulated Order which, *inter alia*, required Defendants to cease and desist all fraudulent conduct, and froze Defendants' assets. On October 8, 2003, the FTC filed its Motion to Compel Production of Documents and Answers to Interrogatories. In this Motion, the FTC asked the court to compel Orphanou to produce certain documents and other evidence. The court initially denied this Motion, but eventually ordered that Orphanou produce the requested evidence. See FTC v. Pacific First Benefit, LLC, 361 F. Supp. 2d 751 (N.D. Ill. 2005). Counsel for Defendants, however, refused to produce this evidence, citing Orphanou's Fifth Amendment privilege against self-incrimination. On May 5, 2005, the court granted the FTC's motion to preclude Orphanou from using these documents and other evidence in the instant litigation. On that same date, the court entered an Order for Permanent Injunction and Judgment as to Liability against the corporate Defendants.

On January 4, 2006, the FTC moved for Summary Judgment against Orphanou, and for a Monetary Judgment against the corporate Defendants. The FTC's Motion was appropriately accompanied by a Memorandum of Law in Support of the Motion, a Local Rule ("LR") 56.1 Statement of Material Facts, and various exhibits. On February 10, 2006, Orphanou, through counsel, submitted his Response to the FTC's Motion for Summary Judgment. This Response, in its entirety, reads: "Now comes defendant Alex Orphanou and responds to the Federal Trade Commission's Motion for Summary Judgment. Throughout the litigation, defendant Orphanou

4

has asserted his 5th Amendment right not to incriminate himself. As a result, defendant Orphanou again asserts his 5th Amendment right and declines to respond further." The Commission's Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. FED. R. CIV. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the nonmoving party. Ameritech Benefit Plan Comm. v.

5

Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the nonmoving party's favor must be drawn from specific facts identified in the record that support that party's position. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003)(citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

As the court has noted, Defendants have failed to file any substantive Response to Plaintiff's Motion for Summary Judgment. The fact that Defendants have not responded to this Motion, however, does not in and of itself give the court license to grant the Motion. See Bolt v. Loy, 227 F.3d 854, 856 (7th Cir. 2000); Tobey v. Extel/JWP, Inc., 985 F.2d 330, 332 (7th Cir. 1993). The court must look to the merits of this Motion. See LaSalle Bank v. Seguban, 54 F.3d 387, 392 (7th Cir. 1995).

Unfortunately for Defendants, their failure to file a substantive Response to the Motion for Summary Judgment has put them at a grave disadvantage at this stage of the litigation. In the Northern District of Illinois, parties must follow LRs 56.1(a) and 56.1(b) during summary judgment proceedings. The party moving for summary judgment must, pursuant to LR 56.1(a)(3), file a statement of material facts as to which that party contends there is no genuine issue. This statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting material relied upon to support the facts set forth in that paragraph." The nonmoving party must then file its response to the moving party's LR 56.1 statement, pursuant to LR 56.1(b)(3). This filing must contain "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other

6

supporting material relied upon." Failure to respond properly (or at all) to the moving party's 56.1 statement has dire consequences. "Essentially, the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant . . . because the movant's factual allegations are deemed admitted." Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000); FTC v. Bay Area Business Council, Inc., 423 F.3d 627, 633 (7th Cir. 2005); LR 56.1(b)(3)(C).

The court also notes that the FTC has competently prepared its LR 56.1 Statement. This Statement contains only material facts, these facts are contained within short numbered paragraphs, and these facts are properly supported by citations to the record. See LR 56.1(a). The court's recital of the factual background to this case was therefore taken solely from the FTC's LR 56.1 Statement, and the court deems the uncontroverted facts contained within this Statement to be admitted. See LR 56.1(b)(3)(C); Bay Area Business Council, Inc., 423 F.3d at 633.

### B. Plaintiff's Motion for Summary Judgment

#### 1. *Violations of the FTC Act*

Under the section 5 of the FTC Act, 15 U.S.C. § 45(a)(1), "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." In order to establish that the Defendants violated this section of the FTC Act, the FTC must show that the Defendants made material misrepresentations or omissions, or engaged in practices, that "likely would mislead consumers, acting reasonably, to their detriment." See FTC v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988); Kraft, Inc. v. FTC, 970 F.2d 311, 314 (7th Cir. 1992). A misrepresentation or omission is material if it is likely to affect a consumer's decision to purchase a product or service. See Bay

7

Area Business Council, Inc., 423 F.3d at 635. Reliance on express claims is considered to be reasonable. See id.

In this case, the undisputed facts clearly establish that Defendants violated section 5 of the FTC Act, as alleged in Count One of the Complaint. Defendants falsely represented that they would provide unsecured credit cards to consumers after the consumers paid Defendants a fee. Defendants' representatives provided specific details about the credit card offer, such as purported low interest rates, lack of annual fees, and credit limits of up to $5,000. After paying the requested fees, consumers did not receive credit cards. Instead, they received essentially worthless "benefit packages" containing easily available information about how to repair bad credit, and offers for discounted vacations and shopping. There is therefore no question as to whether the FTC is entitled to summary judgment as to Count One of its Complaint.

### 2. Violations of the Telemarketing Sales Rule

Section 310.3(a)(2)(iii) of the TSR makes it unlawful for telemarketers to misrepresent any material aspect of the nature of goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(iii); see also Bay Area Business Council, Inc., 423 F.3d at 636. Section 310.4(a)(4) of the TSR prohibits telemarketers from requesting or receiving payment of any fee in advance of obtaining or arranging a loan or other extension of credit where the telemarketer has represented that there is a high likelihood of success in obtaining or arranging such a loan or extension of credit. 16 C.F.R. § 310.4(a)(4). Pursuant to section 3(c) of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6102(c), and section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), violations of the TSR constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a). As the court has discussed above, there is no genuine issue of material fact as to whether Defendants called

consumers on the telephone, offered to obtain a credit card for these consumers in return for a fee, and that the consumers who fell victim to this scam never received credit cards from Defendants. There is therefore no question as to whether the FTC is entitled to summary judgment as to Counts Two and Three of its Complaint, which allege violations of the TSR.

### *3. Orphanou is Individually Liable for the Deceptive Acts and Practices of the Corporate Defendants*

Individuals may be held liable for corporate violations of the FTC Act if the following two prerequisites are met. First, "the FTC must demonstrate that the individual defendants either participated directly in the deceptive acts or practices or had authority to control them." Bay Area Business Council, Inc., 423 F.3d at 636; FTC v. Amy Travel Serv., Inc., 875 F.2d 564, 573 (7th Cir. 1989). Second, "the FTC is obligated to show that the individual defendants either knew or should have known about the deceptive practices." Bay Area Business Council, Inc., 423 F.3d at 636; Amy Travel Serv., Inc., 875 F.2d at 573-74.

There is no question as to whether Orphanou both knew about, and participated directly in, the deceptive acts and practices of the corporate Defendants. The uncontroverted facts in this case establish the following. Orphanou was the sole owner and officer of the corporate Defendants. He was involved in the day-to-day operations of the corporate Defendants. He prepared and approved scripts used by the Corporate Defendants' telemarketers, including a script that expressly stated that consumers had been approved for Visa or Mastercards. He hired employees to market the corporate Defendants' products. He created the worthless packages that were mailed to those consumers who fell victim to this scam. He signed contracts and checks on behalf of the corporate Defendants. He personally handled some customer service telephone calls. He made all determinations as to whether customers would receive refunds. The court

9

therefore finds that Orphanou is individually liable for the deceptive acts and practices of the corporate Defendants.

## C. Requested Relief

The FTC seeks a permanent injunction enjoining Orphanou from engaging in practices that violate section 5 of the FTC Act and the TSR, and prohibiting him from engaging in, or assisting others in, the sale of advance fee credit cards, or any credit-related goods or services directed at United States consumers. The FTC also requests that the court enter a monetary judgment of $8,463,728.00 against Defendants.[2]

The court finds that there is a solid basis in the law to support the requested relief. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) provides that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." It is clear that a case like this one, where Defendants have used deceptive acts and practices to defraud consumers of millions of dollars, constitutes such a "proper case." See FTC v. Febre, 128 F.3d 530, 534 (7th Cir. 1997); FTC v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1027-28 (7th Cir. 1988). Since section 13(b) gives a court authority to grant a permanent injunction, that statute also gives the court "[t]he power to grant ancillary relief includ[ing] the power to order repayment of money for consumer redress as restitution or recission." Febre, 128 F.3d at 534. Finally, section 19(b) of the FTC Act, 15 U.S.C. § 57b(b), indicates that the court may grant such relief as it finds necessary to redress injuries to consumers resulting from a defendant's unfair or deceptive practices. Such relief may include, but is not limited to, "recission or reformation of contracts, the refund of money [and] return of property." 15 U.S.C. § 57b(b).

---

[2] The FTC has submitted uncontroverted documentation, taken from the records of companies Defendants used to process their customer payments, which indicates that the corporate Defendants' net total sales were $8,463,728.00.

10

## III. CONCLUSION

For the foregoing reasons, the FTC's Motions for Summary Judgment against Defendant Alex Orphanou and for Entry of Monetary Judgment against the Corporate Defendants are granted. The FTC is directed to submit a Proposed Order to the court specifically outlining the injunctive, ancillary, and monetary relief it seeks from Defendants. Plaintiff shall submit this Proposed Order on or before February 9, 2007.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

Dated: January 11, 2007